UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HEATHER STICHT,
    *Plaintiff*,

v.

WELLS FARGO BANK, N.A.,
    *Defendant.*

No. 3:20-cv-1550 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Heather Sticht (the "Plaintiff") has sued Wells Fargo Bank, N.A. ("Wells Fargo" or the "Defendant") under the Connecticut Unfair Trade Practices Act ("CUTPA") and Connecticut common law for allegedly improper foreclosure proceedings following a wrongful denial of a mortgage modification. *See* First Am. Compl., ECF No. 34 (Feb. 17, 2021) ("Am. Compl."). The Defendant has moved to dismiss the suit for failure to state a claim upon which relief can be granted. *See* Wells Fargo Bank, N.A.'s Mot. to Dismiss First Am. Compl., ECF No. 37 (Mar. 16, 2021); Wells Fargo Bank N.A.'s Mem. of Law in Supp. of its Mot. to Dismiss First Am. Compl., ECF No. 38 (Mar. 16, 2021) ("Mot. to Dismiss").

For the following reasons, the Defendant's motion to dismiss is **DENIED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Factual Background**

Until January of 2016, Ms. Sticht allegedly owned residential real property at 14 Willow Lane, Clinton, Connecticut, 06413 (the "Property"). Am. Compl. ¶¶ 48, 51–52. Wells Fargo serviced a mortgage the Property, Ms. Sticht's primary residence for about twenty (20) years, to secure a promissory note. *Id.* ¶ 48.

1

In 2012 and 2013, following an injury that prevented her from working, and in a period of financial difficulty, Ms. Sticht allegedly requested a loan modification from Wells Fargo. *Id.* ¶ 49. Thereafter, "Wells Fargo [allegedly] agreed to evaluate her for a mortgage modification." *Id.*

Initially, "Wells Fargo [allegedly] informed Plaintiff that she was eligible for a temporary modification" and reduced her loan payment accordingly. *Id.* ¶ 50. Wells Fargo allegedly told Ms. Sticht that "it would determine whether she was eligible for a permanent modification." *Id.* Ms. Sticht allegedly "made timely payments under the temporary modification." *Id.*

After the temporary modification, however, "Wells Fargo [allegedly] informed Plaintiff that she did not qualify for a mortgage modification and began foreclosure proceedings." *Id.* ¶ 51. Thereafter, "Wells Fargo [allegedly] refused to participate in foreclosure mediation in a meaningful way." *Id.*

Wells Fargo allegedly forced a sale of Ms. Sticht's home, via short sale, on January 26, 2016. *Id.*

On or about September 21, 2018, Ms. Sticht allegedly received a letter from Wells Fargo stating that she "should have been approved for a mortgage modification." *Id.* ¶ 53. Ms. Sticht alleges that Wells Fargo improperly denied her a mortgage modification "due to an internal fault in Wells Fargo's private loan modification software."[1] *Id.* ¶ 55.

In addition, "[t]he letter [allegedly] was accompanied by a $15,000 check that Wells Fargo said was intended to 'make things right.'" *Id.* ¶ 53. "The letter also [allegedly] acknowledged that [the check] would not make Plaintiff financially whole but would only 'help make up for [her] financial loss.'" *Id.*

---

[1] The Amended Complaint alleges in detail Wells Fargo's use and concealment of the allegedly faulty software over a period of around eight years. *See* Am. Compl. ¶¶ 5–47.

2

At around the same time, an employee of Wells Fargo allegedly began making phone calls to Ms. Sticht's home, "about one or two times a week," inquiring as to "whether Plaintiff had received the letter and whether she would be cashing the check." *Id.* Ms. Sticht allegedly cashed the check, after Wells Fargo allegedly assured her "that doing so would not entail the waiver of any of her legal rights." *Id.* ¶ 54.

### B. Procedural Background

On October 14, 2020, Ms. Sticht filed a Complaint against Wells Fargo in federal court. *See* Compl., ECF No. 1 (Oct. 14, 2020).

On December 17, 2020, following a motion for extension of time that was granted by the Court, *see* Order, ECF No. 13 (Dec. 7, 2020), Wells Fargo filed a motion to dismiss, *see* Mot. to Dismiss, ECF No. 17 (Dec. 17, 2020), with an accompanying memorandum of law, *see* Mem. in Supp., ECF No. 18 (Dec. 17, 2020).

On January 22, 2021, Ms. Sticht filed a motion to amend the Complaint, *see* Mot. to Amend/Correct Compl., ECF No. 30 (Jan. 22, 2021), which the Court granted, *see* Order, ECF No. 33 (Feb. 17, 2021).

On February 17, 2021, Ms. Sticht filed an Amended Complaint. *See* Am. Compl. The First Amended Complaint included the following claims against Wells Fargo: (1) violation of CUTPA ("First Count"); unjust enrichment ("Second Count"); recklessness ("Third Count"); negligent infliction of emotional distress ("Fourth Count"); intentional infliction of emotional distress ("Fifth Count"); and breach of the implied covenant of good faith and fair dealing ("Sixth Count"). *See id.*

On March 16, 2021, Wells Fargo renewed its motion to dismiss. *See* Mot. to Dismiss.

On April 12, 2021, Ms. Sticht filed a memorandum in opposition to the Defendant's motion. *See* Pl.'s Brief in Opp'n to Mot. to Dismiss, ECF No. 41 (Apr. 12, 2021) ("Opp'n"). In response to Wells Fargo's motion to dismiss all claims, *see* Mot. to Dismiss, Ms. Sticht withdrew the Second (the unjust enrichment count), Third (the recklessness count), Fourth (the negligent infliction of emotional distress count), and the Sixth Count (the breach of the implied covenant of good faith and fair dealing), *see* Opp'n at 2.

On April 26, 2021, Wells Fargo filed a reply in support of its motion. *See* Wells Fargo's Reply in Further Supp. of its Mot. to Dismiss First Am. Compl., ECF No. 42 (Apr. 26, 2021) ("Reply").

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible."

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III. DISCUSSION

Only two counts remain from the Amended Complaint: Ms. Sticht's First Claim under CUTPA, and her Fifth Claim under state common law for intentional infliction of emotional distress.

The Court will address each count in turn.

## A. Connecticut Unfair Trade Practices Act ("CUTPA")

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Trade or commerce "is broadly defined as 'the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.'" *Fink v. Golenbock*, 238 Conn. 183, 212–13 (1996) (quoting Conn. Gen. Stat. § 42-110a(4)). CUTPA further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act[,] or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages," punitive damages, and equitable relief. Conn. Gen. Stat. § 42-110g(a).

In order to adequately plead a claim, a plaintiff must first demonstrate "that [he or she] has suffered an ascertainable loss due to a CUTPA violation." *Di Teresi v. Stamford Health Sys., Inc.*, 149 Conn. App. 502, 509 (2014) (quoting *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217–18 (2008)). An ascertainable loss is one that is "capable of being discovered, observed or established." *Id.* (citation omitted). A plaintiff also must "establish both that the defendant has engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury." *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997) (emphasis omitted) (citation omitted). "The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." *Id.* "[M]ere 'but for' causation is not sufficient to support a CUTPA claim." *Id.* at 308.

Wells Fargo argues, first, that Ms. Sticht has failed to meet the threshold requirement of demonstrating ascertainable loss, and, further, that she has failed to allege facts establishing

6

causation. Mot. to Dismiss at 4–8. Wells Fargo contends that Ms. Sticht's assertion that she would have qualified for and timely paid a permanent modification is "implausible in light of her admitted financial difficulties, inability to work, and admitted default on her mortgage agreement," and that, relatedly, any alleged causation is too tenuous and speculative to survive a motion to dismiss. *Id.* at 6–7; *see also* Reply at 3–4.

Wells Fargo further argues that Ms. Sticht's claim for punitive damages under CUTPA is inappropriate, where she has failed to allege "wanton and malicious injury" or an "evil motive". Mot. to Dismiss at 7 (internal citations omitted). This is especially so, in Wells Fargo's view, where Ms. Sticht argues that the trial modification was an "error" and Wells Fargo sent a check upon realization of that error. *Id.* at 7–8.

In response, Ms. Sticht argues that the Amended Complaint adequately pleads causation where it states, *inter alia*, that Ms. Sticht "could and would have taken advantage of" the opportunity to obtain a permanent loan modification and remain in her home. Opp'n at 4. In Ms. Sticht's view, speculation that an intervening event might have prevented her from taking advantage of the loan modification is inapposite to the causation inquiry at the motion to dismiss stage, *id.* at 5–7, and, even were that not the case, causation has been established where Ms. Sticht allegedly made timely payments for years before her injury and had returned to work before the short sale, *id.* at 6–7 (citing Am. Compl. ¶¶ 48–49, 52). Ms. Sticht further argues that she has adequately pled ascertainable harm in the form of, *inter alia*, the loss of her home and the property's appreciating value.² Opp'n at 4–5.

The Court agrees, at least as to the conclusion.

---

² Ms. Sticht further argues that Wells Fargo does not contest whether she suffered an ascertainable loss. *See* Opp'n at 4. Wells Fargo contests this characterization. *See, e.g.*, Reply at 2–3.

As a threshold matter, "Connecticut courts have held that misrepresentations by a mortgage company are actionable under CUTPA, and that federal housing and lending statutes can demonstrate a public policy as required by the Act." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 275 (D. Conn. 2017) (internal quotation marks and citation omitted); *see also Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *6 n.2 (D. Conn. Nov. 24, 2015) (denying motion to dismiss CUTPA claim where the defendant, a bank, was alleged to have, *inter alia*, "repeatedly given Plaintiff false information in response to Plaintiff's inquiries" and "used those false representations to coerce Plaintiff to accept less money than he was owed"). Moreover, courts also "have concluded that allegations of improper handling of loan modification applications" specifically "are sufficient to state a claim under state consumer protection laws." *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 798–99 (2019); *Walker v. Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Loan Tr. 2005-11AR*, No. 3:16-CV-697 (AWT), 2017 WL 1115201, at *3 (D. Conn. Mar. 24, 2017) (allegations that bank "breach[ed] . . . modification agreements" and engaged in a "bad faith use of the mediation program" were sufficient to state CUTPA claim).

The Court also finds that Ms. Sticht has adequately pled an ascertainable loss under CUTPA. An ascertainable loss does not require a precise dollar amount; all that is required is an amount that is "capable of being discovered, observed[,] or established". *Di Teresi*, 149 Conn. App. at 508 (internal quotation omitted). In the Amended Complaint, Ms. Sticht has alleged harm including, *inter alia*, loss of property value and money spent to avoid foreclosure. *See* Am. Compl. ¶¶ 54(b), (f). The loss of value of a home and fees associated with foreclosure defense are "measurable and capable of being discovered," and, therefore, suffice to establish ascertainable loss at this stage of the litigation. *See Martino v. Seterus, Inc.*, No. 3:17-CV-1326,

2018 WL 3553406, at *17 (D. Conn. July 23, 2018); *see also, e.g.*, *Johnson v. JPMorgan Chase Bank, N.A.*, No. 3:17-CV-1995 (VLB), 2019 WL 1403396, at *5 (D. Conn. Mar. 28, 2019) (finding ascertainable loss under CUTPA where "Plaintiff alleges she suffered an ascertainable loss equal to the increase in the principal balance and interest which accrued on her mortgage during the period Defendant delayed approval of her mortgage modification"); *Tanasi*, 257 F. Supp. 3d at 276 (denying motion to dismiss in case involving misrepresentations by a mortgage policy where plaintiff has alleged "an ascertainable loss in the form of professional fees in attempting to apply for a mortgage modification, attorneys' fees, postage, copying, and other miscellaneous expenses").

Further, Ms. Sticht has alleged that the prohibited unfair or deceptive trade practices caused the alleged ascertainable loss. For the causation requirement of CUTPA, all that is required, at the pleading stage, is that "the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act." *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 381 (D. Conn. 2019) (quoting *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008) (internal citations omitted)). It is foreseeable that the Defendant's notification to Ms. Sticht that she was ineligible for a mortgage modification would, at a minimum, result in increased expenses. *Id*. at 381 (denying motion to dismiss CUTPA claim where "[i]t is foreseeable that . . . Defendant's denial of [the plaintiff's] housing application would result in increased expenses for [his family]"). Ms. Sticht, therefore, has adequately pled the causation element of her claim under CUTPA.

Accordingly, the Court will not dismiss Ms. Sticht's claim under CUTPA.[3]

---

[3] The Court also will not strike the claim for punitive damages at this stage. "The Connecticut Supreme Court has consistently held that courts may award punitive damages in CUTPA claims when a defendant's conduct was recklessly indifferent." *Flynn v. DIRECTV, LLC*, No. 3:15-CV-1053 (JAM), 2016 WL 4467885, at *5 n.3 (D. Conn. Aug. 23, 2016) (*see Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*, 310 Conn. 797, 824 (2014)).

9

## B. Intentional Infliction of Emotional Distress

Under Connecticut law,[4] four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (citation omitted).

Under Connecticut law, there is a "high threshold" for extreme and outrageous conduct. *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012); *see also Stein v. Allen*, No. FSTCV176033418S, 2018 WL 4038364, at *3 (Conn. Super. Ct. Aug. 2, 2018) (noting that the trial court has a "gatekeeper function" in intentional infliction of emotional distress claims). The Connecticut Supreme Court has held that conduct will only be considered extreme and outrageous under state law if it "exceeds all bounds usually tolerated by decent society." *Appleton*, 254 Conn. at 210–11 (internal quotation marks and citation omitted). And, it is the defendant's "conduct, not the motive behind the conduct[,]" which courts must evaluate in making this determination. *See Armstead v. Stop & Shop Cos., Inc.*, No. 3:01-CV-1489, 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003) (citation omitted). "Even conduct which is

---

"Courts also have broad discretion in the imposition of punitive damages under CUTPA." *Id.* At this stage of the litigation, Ms. Sticht has plausibly alleged that Wells Fargo acted with reckless indifference towards her when it allegedly issued a notice that she was ineligible for a loan modification for which she was indeed eligible and allegedly concealed that fact from her and other customers.

[4] To the extent that this lawsuit belongs in federal court in this District, the Court is exercising diversity jurisdiction and therefore "must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) (internal citation omitted). It is undisputed that Connecticut law applies to these various state law claims. *See* Mot. to Dismiss at 17; Opp'n at 8.

unlawful may not be labeled 'extreme and outrageous' unless it has a natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subject to it." *Hamilton v. Town of Hamden*, No. 3:08-CV-164 (PCD), 2008 WL 4999301, at *10 (D. Conn. Nov. 19, 2008) (internal quotation marks and citation omitted).

Wells Fargo argues that Ms. Sticht's claim for intentional infliction of emotional distress should be dismissed, where the Amended Complaint "lacks allegations suggesting intentionality on the part of Wells Fargo" and where the calculation error alleged to have caused Ms. Sticht's distress "falls well short of Connecticut's stringent 'extreme and outrageous' standard." Mot. to Dismiss at 17–19 (internal citation omitted).

In response, Ms. Sticht contends that Wells Fargo knew or should have known that emotional distress resulting from the loss of a home was the likely result of its conduct. Opp'n at 8–10. Ms. Sticht further argues, in reliance on a case from the Northern District of California, *Hernandez v. Wells Fargo & Co.*, No. C 18-07354 (WHA), 2019 WL 2359198 (N.D. Cal. June 3, 2019), that Wells Fargo's conduct was extreme and outrageous, where it "systemically turned homeowners out into the streets," Opp'n at 10 (citing *Hernandez*, 2019 WL 2359198, at *11).

The Court will defer resolution of this issue. Ms. Sticht has alleged that Wells Fargo's conduct was "extreme and outrageous" where it was done "with the purpose of evading government oversight" and "was responsible for Plaintiff losing her home." Am. Compl. ¶ 82. These allegations indicate conduct that is potentially unlawful or influenced by an improper motive, but may not be "extreme" or "outrageous" as defined by state law; while "[d]ealing with a large financial institution can be enormously frustrating at times, and is doubtless especially distressing if one's home is at stake," and although Ms. Sticht has alleged actions that "offend public policy and are immoral and unethical," there is an argument that "[t]he specific acts [Ms.

11

Sticht] identif[ies] fall short of constituting conduct that is utterly intolerable in a civilized society" as required to state a claim for intentional infliction of emotional distress. *Walker*, 2017 WL 1115201, at *7 (internal citations omitted).

But at least one court in this District has recognized that: "A person's home is her sanctuary and is often her largest asset. Intentionally causing a person to fear losing this type of asset and to incur unnecessary expenses on it is extreme and outrageous." *Johnson*, 2019 WL 1403396, at *7. There, the court denied the motion to dismiss the intentional infliction of emotional distress claim where "Plaintiff claim[ed] that Defendant intentionally delayed the modification process because it knew that interest and payments would accrue towards the principal balance and that it might be able to foreclose Plaintiff's property and generate a profit." *Id.*

Here, Ms. Sticht alleges that Wells Fargo "discover[ed] one of the errors that led it to wrongfully deny mortgage modifications to Plaintiff," Am. Compl. ¶ 8, but "kept its discovery secret—likely in an effort to avoid governmental penalties," *id.* Moreover, Wells Fargo allegedly "failed to regularly and properly audit the software for compliance with government requirements—allowing life-changing errors to remain uncorrected for years on end." *Id.* ¶ 19. As a result, when Ms. Sticht ran into financial difficulties and sought financial relief from her mortgage, Wells Fargo, at first, told her "she did not qualify for a mortgage modification and began foreclosure proceedings." *Id.* ¶ 51. Two years after the forced sale of her home, Wells Fargo allegedly later informed Ms. Stich that she should have been approved for a mortgage modification. *Id.* ¶ 53.

Rather than resolve this issue now, however, given the denial of the motion to dismiss the CUTPA claim, and the overlapping—even if not identical—nature of that claim with the

intentional infliction of emotional distress claim, the Court will exercise its discretion in managing this case, *see Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."), and revisit the appropriateness of dismissal following the close of discovery and at the summary judgment stage of the case.

Accordingly, the Court will not dismiss Ms. Sticht's claim of intentional infliction of emotional distress right now.

### IV.   CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of January, 2022.

                                                /s/ Victor A. Bolden
                                                Victor A. Bolden
                                                United States District Judge