UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HEATHER STICHT,
    *Plaintiff*,

v.

WELLS FARGO BANK, N.A.,
    *Defendant.*

No. 3:20-cv-1550 (VAB)

**RULING AND ORDER ON DISCOVERY DISPUTE**

On January 17, 2023, counsel for Heather Sticht ("Ms. Sticht") and counsel for Wells Fargo Bank, N.A. ("Wells Fargo") jointly requested a conference to address outstanding discovery disputes in this case. *See* Joint Motion for Discovery Conference, ECF No. 79.

Initially, Ms. Sticht sought all previously produced discovery in a now-settled class action, *Hernandez v. Wells Fargo,* No. 3:18cv07354 (WHA) (N.D Cal.) (hereafter "*Hernandez*"), which she argues raised an identical claim as the one at issue in her case. *See* Pl.'s Statement Regarding Discovery Dis., ECF No. 82 ("Sticht Statement"). Wells Fargo objected. *See* Def.'s Position Regarding Discovery Disp., ECF No. 83 ("Wells Fargo Statement").

Following a discovery conference held on February 9, 2023, Ms. Sticht filed a sur-reply. *See* Pl.'s Response, ECF No. 88 (Feb. 13, 2023) ("Sur-Reply"). In her submission, Ms. Sticht suggested a "back up" solution, narrowing her requests to: (1) complete versions of documents either included or excerpted in *Hernandez* as Exhibits 1–40 of Document number 173-1, the Declaration of Michael Schrag In Support of Plaintiffs' Renewed Motion for Class Certification, January 9, 2020, *see* Sur-Reply at 2 ("Request 1"), and (2) the deposition transcripts of the seven Wells Fargo employees the plaintiffs deposed in Hernandez, *see id.* at 3 ("Request 2").

Ms. Sticht similarly focused her deposition requests to "Mr. Neil Gomez, the Wells Fargo

1

employee who interacted with Ms. Sticht, and Ms. Mary Coffin, a Wells Fargo employee whose existence the *Hernandez* plaintiffs didn't learn of until it was too late." *Id.*

Wells Fargo continued its objection to this narrowed discovery request. *See* Def.'s Response to Sur-Reply, ECF No. 91 (Feb. 17, 2023) ("Response to Sur-Reply").

For the reasons that follow, Court **GRANTS in part** and **DENIES in part** the discovery documents sought by Ms. Sticht.

To the extent protective orders are necessary in order to facilitate the discovery required to be produced, the parties shall endeavor to work together and submit them for approval by the Court.

The Court **GRANTS in part** and **DENIES in part**, Ms. Sticht's Rule 30(b)(6) deposition request.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

Until January of 2016, Ms. Sticht allegedly owned a residential real property located at 14 Willow Lane, Clinton, Connecticut, 06413 (the "Property") for about twenty years. *See* Am. Compl. ¶¶ 48, 51–52. Wells Fargo was the servicer of Ms. Sticht's mortgage in connection with the Property. *Id.* ¶ 48.

In 2012 and 2013, following an injury that prevented her from working, and in a period of financial difficulty, Ms. Sticht allegedly requested a loan modification from Wells Fargo. *Id.* ¶ 49. Although Wells Fargo initially "informed Plaintiff that she was eligible for a temporary modification" and reduced her loan payment, *id.* ¶ 50, according to Ms. Sticht, Wells Fargo eventually "informed Plaintiff that she did not qualify for a mortgage modification and began

foreclosure proceedings." *Id.* ¶ 51. Ultimately, Wells Fargo allegedly forced a sale of Ms. Sticht's home, through a short sale, on January 26, 2016. *Id.*

On or about September 21, 2018, Ms. Sticht allegedly received a letter from Wells Fargo, stating that she "should have been approved for a mortgage modification." *Id.* ¶ 53. According to Ms. Sticht, the denial of a mortgage modification was "due to an internal fault in Wells Fargo's private loan modification software."[1] *Id.* ¶ 55. The letter, according to Ms. Sticht, "was accompanied by a $15,000 check that Wells Fargo said was intended to 'make things right.'" *Id.* ¶ 53.

After receiving the letter, an employee of Wells Fargo allegedly began making phone calls to Ms. Sticht's home, "about one or two times a week," inquiring as to "whether Plaintiff had received the letter and whether she would be cashing the check." *Id.* Ms. Sticht cashed the check, after Wells Fargo allegedly assured her "that doing so would not entail the waiver of any of her legal rights." *Id.* ¶ 54.

### B. Procedural History

On October 14, 2020, Ms. Sticht sued Wells Fargo, alleging eight causes action relating to Wells Fargo denying her a mortgage modification. *See* Compl.

On December 17, 2020, Wells Fargo filed a motion to dismiss. *See* Pl.'s Mot. to Dismiss, ECF No. 17. On the same day, Wells Fargo filed a motion to strike certain paragraphs from the Complaint. *See* Mot. to Strike, ECF No. 19.

On January 22, 2021, Ms. Sticht filed a motion to Amend/Correct the Complaint. *See* Pl.'s Mot. to Amend/Correct Compl., ECF No. 30.

On January 25, 2021, the Court granted Ms. Sticht's motion to amend/correct the

---

[1] The Amended Complaint alleges in detail Wells Fargo's use and concealment of the allegedly faulty software over a period of around eight years. *See* Am. Compl. ¶¶ 5–47.

Complaint and denied, as moot, Wells Fargo's motion to strike related to original Complaint. *See* Order, ECF No. 31.

On February 17, 2021, Ms. Sticht filed an Amended Complaint, alleging six causes of action relating to Wells Fargo denying her a mortgage modification. *See* Am. Compl., ECF No. 34.

On March 16, 2021, Wells Fargo filed a motion to dismiss the Amended Complaint. *See* Def.'s Mot. to Dismiss Am. Compl. *See* ECF No. 37.

On April 12, 2021, Ms. Sticht filed an opposition to the motion to dismiss. *See* Pl.'s Opp'n to Mot. to Dismiss, ECF No. 41. In response to Wells Fargo's motion to dismiss all claims, *see* Mot. to Dismiss, Ms. Sticht withdrew the Second (the unjust enrichment count), Third (the recklessness count), Fourth (the negligent infliction of emotional distress count), and Sixth (the breach of the implied covenant of good faith and fair dealing). *See* Opp'n at 2.

On April 26, 2021, Wells Fargo filed a reply in further support of its motion to dismiss. *See* Reply, ECF No. 42.

On January 25, 2022, the Court held oral arguments on the motion to dismiss. *See* Min. Entry, ECF No. 57.

On January 28, 2022, the Court issued a Ruling denying the motion to dismiss. *See* Order, ECF No. 58.

On March 4, 2022, Wells Fargo filed its Answer to the Amended Complaint. *See* Answer, ECF No. 63.

On January 17, 2023, the parties filed a joint motion requesting a discovery conference. *See* Joint Mot. for Disc. Conference, ECF No. 79. The next day, the Court granted that motion and ordered the parties to file statements in support of their respective positions in preparation

for a discovery conference, which the Court set for February 9, 2023. *See* Order, ECF No. 80.

On January 27, 2023, Wells Fargo and Ms. Sticht each filed their statements. *See* Sticht Statement; Wells Fargo Statement.

On February 3, 2023, Wells Fargo and Ms. Sticht each filed a response. *See* Pl.'s Response, ECF No. 84 ("Sticht Resp."); Def.'s Statement, ECF No. 85 ("Wells Fargo Resp.").

On February 9, 2023, the court held a discovery conference. The Court permitted the parties to submit supplemental briefing in support of their positions. *See* Min. Entry, ECF. No. 86.

On February 13, 2023, Ms. Sticht filed her supplemental statement. *See* Sur-Reply.

On February 17, 2023, Wells Fargo filed its response to Ms. Sticht's Supplemental statement. *See* Response to Sur-Reply.

## II.     STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

But "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Indeed, "[a] trial court enjoys wide discretion in its handling of pre-trial discovery. . . ." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992); *see Gen. Houses v. Marloch Mfg. Corp.*, 239 F.2d 510, 514 (2d Cir. 1956) ("The order of examination is at the discretion of the trial judge . . . .").

## III. DISCUSSION

The parties' dispute centers around whether Ms. Sticht is entitled to discovery which Wells Fargo previously produced in a now-settled class action, *Hernandez*, and whether Ms. Sticht may depose a Wells Fargo representative about those documents.

The Court will address each dispute separately.

### A. *Hernandez* Discovery[2]

According to Ms. Sticht, *Hernandez* involved a claim that is identical to the claim she is pursuing in this case—namely injuries resulting from Wells Fargo's wrongful denial of a mortgage modification to her as well as the class members in *Hernandez*. Sticht Statement at 1. Although the class members in *Hernandez* had lost their homes to foreclosure rather than through a short sale, that distinction, she argues, does not impact Wells Fargo's liability with respect to its alleged wrongful denial of mortgage modification to her and the *Hernandez* class members. *Id.*

Ms. Sticht asserts that the plaintiffs in *Hernandez* "obtained very considerable discovery from Wells Fargo about the events leading up to and surrounding the alleged misconduct." *Id.* at 2. This discovery, she argues, "uncovered a large amount of alleged misconduct related to . . . Wells Fargo's alleged mistreatment of home mortgage holders." *Id.* Rather than engage in "contentious [discovery] disputes[]" over a "series of [document] requests," Ms. Sticht asks this Court to compel Wells Fargo to provide to her discovery it has already provided to the *Hernandez* plaintiffs. *Id.* at 1.

---

[2] Ms. Sticht's discovery request notice initially asked Wells Fargo produce "[a]ll documents in cases of *Hernandez, et al v. Wells Fargo*, 3:18cv07354 (WHA) or *Ryder, et al v. Wells Fargo*, 1:19cv00638 (TSB)." Exhibit A to Wells Fargo's Statement, EFC No. 83-1 (Jan. 27, 2023) ("Document Request"). Ms. Sticht, however, has now clarified that "she is not pressing the motion to compel *Ryder* documents." Sticht Statement at 2. Accordingly, the Court will focus this Ruling on documents related to the *Hernandez* case.

6

Wells Fargo first argues that Ms. Sticht's request for "all documents" from the *Hernandez* litigation does not meet the relevance standard for discovery and is overbroad and unduly burdensome. *See* Wells Fargo Statement at 3–6, 8–10. Wells Fargo next argues that Ms. Sticht's request is not proportional to the needs of her case.[3]

The Court will address these arguments in turn.

**1. Relevance and Burden**

Wells Fargo argues that Ms. Sticht and the class members in *Hernandez* "were differently situated" because Ms. Sticht is "pursuing Connecticut state law CUTPA and IIED claims," whereas the claim in *Hernandez* was breach of contract. *Id.* at 4–5. In addition, Wells Fargo argues, the class members in *Hernandez* lost their homes to foreclosure whereas Ms. Sticht "sold her home via a voluntary short sale[.]" *Id*. Furthermore, it argues that a request for "all documents" including those that were referred to in the filings from the previous class actions is "is overbroad and unduly burdensome on its face." *Id.* at 9. It notes that "there were 345 filings with over 390 exhibits filed on the docket in Hernandez[.]" *Id.* at 9.

Ms. Sticht responds that "all or at least the great bulk of discovery in *Hernandez* – and therefore the production of documents requested here – was done when the *Hernandez* plaintiffs were pursuing claims that are essentially identical to the claims in this case." Sticht Response at 1. According to Ms. Sticht, the elements of IIED claims in her case and the plaintiffs in *Hernandez* are "essentially identical[.]" *Id.* And likewise, the elements of her CUTPA claims are "essentially identical" to the California Unfair Competition Law at issue in *Hernandez*. *Id.*

---

[3] Wells Fargo also argues that the production of these documents would violate the protective order put in place by the court in *Hernandez*. That argument, however, is without merit. As Ms. Sticht acknowledged, any discovery produced in this case would be subject to "protective orders if and as appropriate[,]" Sticht Statement at 2, thereby extending the confidentiality protections in *Hernandez*. *See e.g., Munoz v. PHH Corp.,* No. 1:08-CV-0759-AWI-BAM, 2013 WL 684388, at *5 (E.D. Cal. Feb. 22, 2013) (explaining, in a clone discovery dispute, that "to the extent that Defendants fear that production will produce confidential information," in that case, "a stipulated protective order" would sufficiently address those concerns).

7

Lastly, she argues that "the cost of uploading the documents that have already been produced is trivial compared to the costs that will be imposed on the parties – and, notably, on the Court – to relitigate discovery." *Id.* at 2.

The Court agrees in part.

To the extent that Wells Fargo's relevance argument rests on the distinction between the liability at issue in *Hernandez* and this case, that argument fails. The issue of liability in *Hernandez* and in this case essentially are identical. The liability inquiry as to the *Hernandez* plaintiffs, just as it is in this case, is whether, Wells Fargo wrongfully denied mortgage modifications to its home mortgage holders and thereby caused them injuries. Therefore, documents relevant to that inquiry—wrongful denial of mortgage modification—in *Hernandez* would likewise be relevant in this case.

Wells Fargo insists that Ms. Sticht's case is distinguishable from the *Hernandez* plaintiffs because Ms. Sticht "sold her home via a voluntary short sale[.]" Wells Fargo Statement at 5. That distinction, however, is one without a difference with respect to the underlying liability inquiry: whether Wells Fargo allegedly wrongfully denied both Ms. Sticht and the *Hernandez* plaintiffs mortgage modifications before the foreclosures and the short sale.

Common liability interests between this case and the *Hernandez* case, however, do not resolve completely the relevancy issue and whether all of the discovery produced in that case is relevant in this one. It is not only possible, but likely that discrete aspects of this case, such as idiosyncratic financial problems of the plaintiffs there, may have no bearing whatsoever on the issues Ms. Sticht pursues in this case. Indeed, that is the import of the various cases in which courts around the country and even within this District have rejected the approach taken here and have found that "[a]sking for all documents produced in another case is not generally proper."

8

*Goro v. Flowefr Foods, Inc.*, No. 17-cv-02580-JLB, 2019 WL 6252499, at *18 (S.D.. Cal. Nov. 22, 2019).

But courts also have recognized the propriety of such discovery requests in some cases. *See, e.g., Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18CV1781PGGBCM, 2020 WL 9423921, at *3 (S.D.N.Y. Aug. 31, 2020) ("Plaintiffs' discovery request . . . asks only for [Transword Systems, Inc.] own documents previously produced to the [Consumer Financial Protection Bureau]."); *see also Munoz v. PHH Corp.*, No. 1:08-CV-0759-AWI-BAM, 2013 WL 684388, at *4 (E.D. Cal. Feb. 22, 2013) ("There can be no serious dispute that documents related to the CFPB's investigation of Defendants reinsurance arrangements are relevant to Plaintiffs suit based on identical allegations."). As a result, the issue is whether there is a specific reason to deny Ms. Sticht's request here.

Here, while Wells Fargo's overall point has considerable merit, to avoid unnecessary delay in the prosecution of this case, especially given Wells Fargo's recognition of "an internal fault in Wells Fargo's private loan modification software," Am. Compl. ¶¶ 5–47, the best course of action is to permit, at least, some of this discovery, unless it is otherwise overly broad and unduly burdensome.

On this point, Wells Fargo is correct. It would be overboard and burdensome to require it to review and produce "345 filings with over 390 exhibits filed on the docket in *Hernandez*," including "documents referenced within those filings[.]" Wells Fargo Statement at 9, Ex. A at 1. Thus, to the extent that Ms. Sticht is requesting those documents, which already are publicly docketed in *Hernandez*, that request is overbroad and burdensome, and will be denied.

As to the discovery documents that Wells Fargo produced to Plaintiffs' counsel in

*Hernandez*, however, the concerns of "overbroad" and "burden" are less substantial.[4] As Ms. Sticht noted—and Wells Fargo does not meaningful dispute[5]—the request is simply for Wells Fargo to "clone" and upload the documents. *See* Sticht Response at 2 (stating that "the cost of uploading the documents that have already been produced is trivial").

Accordingly, the Court concludes that discovery documents that Wells Fargo produced in *Hernandez* are relevant and their production is not unduly burdensome.

## 2. Proportionality

Wells Fargo next argues that Ms. Sticht's document request is not proportional to the needs of this case. *See* Wells Fargo Statement at 6 ("[R]equiring Wells Fargo to produce what would amount to well over 100,000 documents is not proportional to the needs of this two-claim, single-plaintiff action.").

In response, Ms. Sticht argues that although she is a single plaintiff, she "has two serious claims that implicate the very same issues and documents that were involved in *Hernandez*." Sticht Response at 2. In her view, "[i]t is requiring her to find those documents a few at a time with who-knows-how-many document requests that is not proportional." *Id*.

The Court agrees in part.

Along with proportionality, the relevant inquiry is "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

[4] Ms. Sticht also request that Wells Fargo produce discovery that it received from the *Hernandez* Plaintiffs. The Court finds that those documents are not relevant in this case. *See* Ex. A. Accordingly, that request is denied. *See In Re Alliance Pharm. Sec. Litig.,* No. M-8-85, 1995 WL 51189, at *1 (S.D.N.Y. Feb. 9, 1995) (concluding that discovery requests cannot not be "based on pure speculation or conjecture[]").

[5] During oral arguments, counsel for Wells Fargo stated: "The issue that we have here is that plaintiff has simply requested all documents, and if we had a chance to see some more narrowly tailored document requests then we would have an opportunity to assess, you know, what might be available to us or, as you said, readily usable, and we could determine what to object to." Tr. of Discovery Hearing at 8:20–9:01, ECF No. 87 (Feb. 13, 2023). Although Ms. Sticht has now significantly narrowed her request, Wells Fargo's objection remains unchanged.

whether the burden or expense of the proposed discovery outweighs its likely benefit." *Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:19-CV-839(JCH), 2020 WL 6074204, at *6 (D. Conn. Oct. 15, 2020) (quoting Fed. R. Civ. P. 26(b)(1). And "[g]enerally, the greater the relevance of the requested information, the less likely the requested discovery will be disproportionate to the needs of the case." *Id.* (citation omitted).

Because of the similarity between the claims at issue in *Hernandez* and the claims in this case, Wells Fargo's production of documents—which it has already generated in *Hernandez*—to Ms. Sticht is proportional to the needs of this case. *See Munoz v. PHH Corp.*, No. 1:08-CV-0759-AWI-BAM, 2013 WL 684388, at *6 (E.D. Cal. Feb. 22, 2013) (holding, in "cloned" discovery request dispute, "the relevancy of Plaintiffs' request far outweigh[ed] the minimal burden to Defendants"); *Peterson v. Wright Med. Tech., Inc.*, No. 11-1330, 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013) (same).

Accordingly, the Court will grant Ms. Sticht's narrowed discovery Request 1, specifically, "[c]omplete versions of documents either included or excerpted in *Hernandez* as Exhibits 1-40 of Doc 173-1, the Declaration of Michael Schrag In Support of Plaintiffs' Renewed Motion for Class Certification, January 9, 2020." *See* Sur-Reply at 2.[6]

### B. Deposition Request

Under Rule 30(b)(6), Ms. Sticht seeks to depose a Wells Fargo corporate representative regarding the "the content and meaning of the documents" produced in the *Hernandez*. Ex. B to Wells Fargo Statement, ECF No. 83-2 (Jan. 27, 2023) ("Deposition Notice").

---

[6] Ms. Sticht requests deposition transcripts for seven Wells Fargo employees that the plaintiffs in *Hernandez* deposed. *See* Request 2. To the extent that those transcripts are "included or excerpted" in the declaration of Michael Schrag, Request 2 is duplicative, as the production of those transcripts would be required as part of Request 1. To the extent that those transcripts are not included in Request 1, the parties are directed to meet and confer regarding their production. The parties may request the Court's intervention, if they are unable to resolve any dispute that arises with respect to those transcripts.

11

Wells Fargo responds that Ms. Sticht's notice "lacks reasonable particularity and is unfocused." Wells Fargo Statement at 10. More specifically, Wells Fargo argues that "there would be no way for the Bank to identify or prepare a corporate representative to testify on Plaintiff's generic request for 'the content and meaning' of over 100,000 unspecified documents from the *Hernandez* and *Ryder* actions." *Id.*

In her supplemental submission, Ms. Sticht narrowed her deposition request to "Mr. Neil Gomez, the Wells Fargo employee who interacted with Ms. Sticht, and Ms. Mary Coffin, a Wells Fargo employee whose existence the *Hernandez* plaintiffs didn't learn of until it was too late." Sur-Reply at 3.

Wells Fargo does not raise an objection the deposition of Mr. Gomez. Instead, it focuses its objection to the request to depose Ms. Mary Coffin. It argues that "it is well-settled that the testimony of high-level executives should be precluded where a plaintiff fails to demonstrate that the executive 'possess[es] any information that could not be obtained from lower level employees or other sources.'" Response to Sur-Reply at 4–5 (quoting *Rodriguez v. SLM Corp.*, No. 3:07CV1866 (WWE), 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010)).

The Court agrees.

Rule 30(b)(6) requires a party requesting a deposition to "describe with reasonable particularity the matters on which examination is requested." F. R. Civ. P. 30(b)(6). Ms. Sticht's initial generalized notice requesting the "deposition of the defendant" regarding the "the content and meaning of the documents" produced in *Hernandez*, Ex. B to Wells Fargo's Statement, EFC No. 83-2 (Jan. 27, 2023) ("Deposition Request"), "does not describe the issues to be addressed with 'reasonable particularity,'" *Krasney v. Nationwide Mut. Ins. Co.*, No. 3:06 CV 1164 JBA, 2007 WL 4365677, at *3 (D. Conn. Dec. 11, 2007).

Accordingly, that request will be denied without prejudice. After reviewing the discovery documents she receives from Wells Fargo, Ms. Sticht may renew her request, provided that she describes with sufficient particularity the matter to addressed during the deposition. *Cf. Martino v. Nationstar Mortg. LLC*, No. 3:17-CV-01326 (KAD), 2019 WL 10255236, at *2 (D. Conn. Oct. 30, 2019) (permitting a party to "reconvene a Rule 30(b)(6) deposition . . . [after] identify[ing] by BATES number those documents about which [the party] intends to make inquiry[]).

The Court will also deny, without prejudice, the request to depose Ms. Mary Coffin. Ms. Sticht fails to show that Ms. Cohen possesses "unique factual information and institutional knowledge necessary to the prosecution of this case." *Rodriguez*, 2010 WL 1286989, at *2 (citation omitted). To the extent that Ms. Sticht is able show that Ms. Coffin has unique factual information or institutional knowledge that is relevant to her case, Ms. Sticht may renew her request. *See id.* at 3 (permitting "plaintiffs [to] renew their request to depose higher level executives upon a showing that there is reason to believe [the high level executives] have "unique factual information and institutional knowledge[]"). Finally, absent objection, the Court will grant the request to depose Mr. Neil Gomez.

## IV.   CONCLUSION

For the reasons explained above, the Court **GRANTS in part** and **DENIES in part** the discovery documents sought by Ms. Sticht.

To the extent protective orders are necessary in order to facilitate the discovery required to be produced, the parties shall endeavor to work together and submit them for approval by the Court.

The Court **GRANTS in par**t **DENIES in part** Ms. Sticht's Rule 30(b)(6) deposition request.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
