**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| HEATHER STICHT,   )   | |
| )   | |
| Plaintiff,   )   | Civil Action No. 3:20-cv-01550 |
| )   | |
| v.   )   | Hon. Victor A. Bolden |
| )   | |
| WELLS FARGO BANK, N.A.,   )   | |
| )   | |
| Defendant.   )   | |
| )   | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     LEGAL STANDARD ................................................................................................... 2

III.    UNDISPUTED FACTS RELEVANT TO SUMMARY JUDGMENT ....................... 4

    A.    Loan History ...................................................................................................... 4

    B.    The Erroneously Denied Trial Modification ..................................................... 6

    C.    Procedural Background ...................................................................................... 7

IV.     THE UNDISPUTED EVIDENCE ESTABLISHES THAT BOTH OF
        PLAINTIFF'S CLAIMS FAIL FOR LACK OF CAUSATION ................................... 8

    A.    Sticht Could Not Have Afforded the Correctly Calculated Trial
          Payments ............................................................................................................ 8

    B.    Wells Fargo Did Not Cause Sticht to Lose Any Personal Property ............... 11

    C.    Summary Judgment Is Warranted on the Independent Ground that
          Sticht Could Have Reasonably Avoided Her Claimed Injuries ...................... 12

V.      STICHT IS NOT ENTITLED TO THE EMOTIONAL DISTRESS
        DAMAGES SHE SEEKS .............................................................................................. 14

    A.    Sticht Did Not Suffer "Severe" Emotional Distress ....................................... 15

          1.    Sticht Disclaims Experiencing Anxiety or Depression in
                Connection with the Erroneous Denial ................................................ 16

          2.    Sticht's Family Members Do Not Corroborate Her Alleged
                Severe Emotional Distress .................................................................... 18

          3.    Sticht Offers No Evidence of Any Treatment for Her Alleged
                Emotional Distress ................................................................................ 20

          4.    Sticht's Own Testimony Also Defeats Her IIED Claim
                Because It Establishes a Lack of Causation .......................................... 21

    B.    Wells Fargo Did Not Cause an Ascertainable Loss to Sticht ......................... 22

    C.    Wells Fargo's Conduct Was Not "Extreme and Outrageous" ........................ 23

VI.     CONCLUSION .............................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Big Y Foods, Inc.*,
   52 F.4th 66 (2d Cir. 2022) ..................................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................................3

*Appleton v. Bd. of Educ. of the Town of Stonington*,
   254 Conn. 205 (2000) ............................................................................................14, 15, 21

*Bank of Am., N.A. v. Criscitelli*,
   No. CV136038369S, 2015 WL 5806294 (Conn. Super. Ct. Aug. 31,
   2015)..............................................................................................................................24, 26

*Barham v. Wal-Mart Stores, Inc.*,
   2017 WL 3736702 (D. Conn. Aug. 30, 2017).................................................................. 17

*Brink v. Union Carbide Corp.*,
   210 F.3d 354 (2d Cir. 2000)................................................................................................4

*Buster v. City of Wallingford*,
   557 F. Supp. 2d 294 (D. Conn. 2008) .............................................................................. 22

*Comm'n on Hum. Rights & Opportunities v. Cantillon*,
   347 Conn. 58 (2023) ........................................................................................................ 18

*Conn. Jud. Branch v. Gilbert*,
   343 Conn. 90 (2022) ........................................................................................................ 20

*DeLeon v. Little*,
   981 F. Supp. 728 (D. Conn. 1997)..............................................................................24, 26

*Di Teresi v. Stamford Health Sys., Inc.*,
   149 Conn. App. 502 (2014).........................................................................................22, 23

*Dixon v. Metro. Dist. Comm'n*,
   No. 3:14-CV-01468 (VAB), 2017 WL 4247051 (D. Conn., Sept. 25,
   2017)....................................................................................................................................3

*Doe by and through Boyd v. Smereczynsky*,
  No. 3:16-CV-00394 (MPS), 2018 WL 4266084 (D. Conn., Sept. 6, 2018) ..................... 14

*Golnik v. Amato*,
  299 F. Supp. 2d 8 (D. Conn. 2003) ..................................................................................... 25

*Hamilton v. Town of Hamden*,
  No. 3:08-CV-164 (PCD), 2008 WL 4999301 (D. Conn. Nov. 19, 2008) ........................ 24

*James v. RD Am., LLC*,
  No. 3:16-CV-1445 (VAB), 2019 WL 1052179 (D. Conn., Mar. 5, 2019) ......................... 3

*Kasuba v. Costco Wholesale Corp.*,
  No. 3:22-CV-52 (VDO), 2024 WL 94380 (D. Conn., Jan. 9, 2024) ................................... 3

*Kilduff v. Cosential, Inc.*,
  289 F. Supp. 2d 12 (D. Conn. 2003) ................................................................................... 24

*Larobina v. Wells Fargo Bank, N.A.*,
  632 F. App'x. 55 (2d Cir. 2016) ......................................................................................... 22

*Leaksealers, Inc. v. Conn. Nat'l Bank*,
  1995 WL 384611 (Conn. Super. Ct. 1995) ......................................................................... 13

*Lopez-Salerno v. Hartford Fire Ins. Co.*,
  1997 WL 766890 (D. Conn., Dec. 8, 1997) ....................................................................... 25

*Louison v. W. Haven Buckle Co.*,
  1995 WL 512960 (Conn. Super. Ct. Aug. 23, 1995) ......................................................... 13

*Malick v. JP Morgan Chase Bank, N.A.*,
  797 F. App'x 563 (2d Cir. 2019) ....................................................................................... 22

*Maselli v. Reg'l Sch. Dist. No. 10*,
  235 A.3d 599 (Conn. App. 2020) ....................................................................................... 16

*McCulloch v. Hartford Life and Acc. Ins. Co.*,
  363 F.Supp.2d 169 (D. Conn. 2005) ............................................................................. 10, 11

*Minto v. Conn. State Police*,
  No. 3:14-CV-00747 (VLB), 2016 WL 5845193 (D. Conn. Sept. 30,
  2016) ................................................................................................................................... 18

*Mumma v. Pathway Vet All., LLC*,
    648 F. Supp. 3d 373 (D. Conn. 2023) ................................................................................. 18

*Oral Care Dental Grp. II, LLC v. Pallet*,
    213 Conn. App. 389 (2022).......................................................................................... 15, 20

*Parks v. Blanchette*,
    144 F. Supp. 3d 282 (D. Conn. 2015) ................................................................................... 3

*Petyan v. Ellis*,
    200 Conn. 243 (1986) ......................................................................................................... 24

*Powell v. Jones-Soderman*,
    433 F. Supp. 3d 353 (D. Conn. 2020), *aff'd*, 849 F. App'x 274 (2d Cir.
    2021)..................................................................................................................................... 17

*Remine v. Deckers*,
    871 F. Supp. 1538 (D. Conn. 1995) ...................................................................................... 3

*Rivera v. W. Haven Smile Dental, LLC*,
    2019 WL 13295527 (D. Conn. May 30, 2019) ........................................................... 17, 21

*Robinson v. Concentra Health Servs., Inc.*,
    781 F.3d 42 (2d Cir. 2015)..................................................................................................... 3

*Sabir v. Jowett*,
    214 F. Supp. 2d 226 (D. Conn. 2002) ................................................................................. 15

*Spector v. Bd. of Trs. of Cmty.-Tech. Colls.*,
    2007 WL 9753111 (D. Conn. June 28, 2007) ..................................................................... 21

*Stapleton v. Monro Muffler*,
    No. CV980580365S, 2003 WL 462566 (Conn. Super. Ct. Feb. 3, 2003) ........................ 15

*Stefanidis v. Jos. A. Bank Clothiers, Inc.*,
    No. 3:14-CV-971 (VAB), 2016 WL 845297 (D. Conn. Mar. 2, 2016) ............................ 18

*Stubbs v. Gerken*,
    No. 3:21CV01525(SALM)) 2022 WL 4585296 (D. Conn., Sept. 29,
    2022)..................................................................................................................................... 16

*Sylvia v. Kensington Auto Serv., Inc.*,
    2021 WL 2634502 (D. Conn., June 26, 2021) ...................................................................... 8

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
  547 F. Supp. 3d 195 (D. Conn. 2021), *aff'd*, 79 F.4th 206 (2d Cir. 2023) .........................8

*Tommy's Supplies LLC v. Papillon Ink LLC*,
  No. 3:16-CV-1922 (RAR) 2020 WL 1532367 (D. Conn., Mar. 31, 2020) ........................4

*Troland v. Whitehead*,
  No. 3:12CV822 AVC, 2013 WL 1136720 (D. Conn., Mar. 18, 2013)............................ 21

*U.S. on Behalf of and for Use of Balf Co. v. Casle Corp.*,
  895 F. Supp. 420 (D. Conn. 1995)......................................................................................... 12

*Wade v. Churyk*,
  2018 WL 3830924 (D. Conn. Aug. 13, 2018)..................................................................... 20

*Walker v. Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Loan Tr. 2005-11AR*,
  No. 3:16-CV-697(AWT), 2017 WL 1115201 (D. Conn., Mar. 24, 2017) ................ 25, 26

*Westport Ins. Corp. v. Gionfriddo*,
  524 F. Supp. 2d 167 (D. Conn. 2007) ...................................................................................2

*Williams v. Cmty. Sols., Inc.*,
  932 F. Supp. 2d 323 (D. Conn. 2013) ................................................................................. 24

**Statutes**

Conn. Gen. Stat. Ann. § 42-110g ................................................................................................ 22

**Other Authorities**

Fed. R. Civ. P. 56(a)........................................................................................................................3

https://home.treasury.gov/data/troubled-assets-relief-
  program/housing/mha/hamp........................................................................................................5

Restatement (Second) of Torts Section 46 ......................................................................... 16, 24

## I.     INTRODUCTION

In June 2014, due to a software error, Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank") denied Plaintiff Heather Sticht ("Sticht") a Federal Home Loan Mortgage Corporation (FHLMC) Streamlined Trial Modification.  According to Sticht, Wells Fargo's denial caused her to lose her home, leave behind personal property, and suffer *severe* emotional distress.  The undisputed facts establish that Wells Fargo's erroneous denial was not the cause of her injuries, which is fatal to her remaining consumer fraud and intentional infliction of emotional distress ("IIED") claims.  Summary judgment should be granted in Wells Fargo's favor.

Sticht admits that, in June 2014, she needed to reduce her monthly payments by at least $300 to make her mortgage affordable.  Had the software error not occurred, the correctly calculated FHLMC Streamlined Trial Modification would have reduced Sticht's mortgage payment by only *$3.05 per month* (1% of what she needed).  Thus, even with a correctly calculated trial modification offer, by Sticht's own admission, she would not have been able to afford her payments.  Therefore, there is no disputed fact that Wells Fargo's erroneous denial did not cause any of her alleged harm.  Unable to establish causation, a required element of both of her claims, Sticht cannot recover any damages.

Beyond the lack of causation, Sticht's claims also fail because of her own conduct.  In her complaint, Sticht alleged that Wells Fargo forced her to leave her home and that Wells Fargo caused her to lose personal property.  That story, as it turns out, is simply not true.  As she admitted in her deposition, Sticht voluntarily vacated her home at the direction of her

1

foreclosure attorney and left personal property on the side of the road four months *before* the erroneous denial.  In fact, Sticht hired a realtor and listed the home for sale a month *before* the date of the error.  And the realtor that Sticht hired locked her out of the property before the error happened—Wells Fargo had nothing to do with it.

Moreover, the evidence also establishes that Sticht's claimed emotional distress does not rise to the level of "severe," as required to proceed past summary judgment on her intentional infliction of emotional distress ("IIED") claim.  Her own testimony disproves that she experienced depression or anxiety beyond "garden variety" in connection with the June 2014 erroneous modification denial, and her family members' testimony does not corroborate any heightened level of distress either.  Nor are there any medical records in evidence to do so.  Sticht's claims that Wells Fargo's conduct was "extreme and outrageous" and that she has an "ascertainable loss" also fail for want of evidence.

In sum, on the undisputed factual record, Sticht cannot establish essential elements of her Connecticut Unfair Trade Practices Act ("CUTPA") and IIED claims.  She cannot prove that Wells Fargo's erroneous denial caused the short sale of her home or any ascertainable loss, that her emotional distress was severe, or that Wells Fargo's conduct was extreme and outrageous.  Accordingly, the Court must enter summary judgment for the Bank.

## II.     LEGAL STANDARD

Summary judgment is warranted where a party fails to establish an element essential to its claims, on which that party will bear the burden of proof at trial.  *Westport Ins. Corp. v. Gionfriddo*, 524 F. Supp. 2d 167, 173 (D. Conn. 2007).  The Court should grant summary

2

judgment where there is no genuine dispute as to any material fact. *Kasuba v. Costco Wholesale Corp.*, No. 3:22-CV-52 (VDO), 2024 WL 94380, at *1 (D. Conn., Jan. 9, 2024) (quoting Fed. R. Civ. P. 56(a)). A material fact is one that would affect the outcome of the suit under governing law, and it is disputed only if the evidence could allow a ***reasonable*** factfinder to return a verdict for the nonmoving party. *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 72 (2d Cir. 2022). "Irrelevant or unnecessary" disputed facts are not "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If no reasonable jury could find in favor of the opposing party because 'the evidence to support its case is so slight, there is no genuine issue of material fact[.]'" *Dixon v. Metro. Dist. Comm'n*, No. 3:14-CV-01468 (VAB), 2017 WL 4247051, at *4 (D. Conn., Sept. 25, 2017) (citation omitted).

Initially, the movant must demonstrate that there is no genuine issue as to a material fact. *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted); Fed. R. Civ. P. 56(a). Once it has done so, the non-movant "may not rest on allegations" or rely on its own conjecture, as both are "insufficient to create a genuine issue of material fact on summary judgment." *Remine v. Deckers*, 871 F. Supp. 1538, 1540 (D. Conn. 1995); *Parks v. Blanchette*, 144 F. Supp. 3d 282, 334 (D. Conn. 2015). Instead, "the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor.'" *Kasuba*, 2024 WL 94380, at *2 (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (citations omitted)); *see also James v. RD Am., LLC*, No. 3:16-CV-1445 (VAB), 2019 WL 1052179, at *12 (D. Conn., Mar. 5, 2019). The proffered evidence

3

must be both specific and "of a type that would be admissible at trial." *Tommy's Supplies LLC v. Papillon Ink LLC*, No. 3:16-CV-1922 (RAR) 2020 WL 1532367, at *4 (D. Conn., Mar. 31, 2020); *Brink v. Union Carbide Corp.*, 210 F.3d 354 (2d Cir. 2000).

## III.    UNDISPUTED FACTS RELEVANT TO SUMMARY JUDGMENT

### A.    Loan History

In October 1993, Sticht took out a mortgage loan and purchased a house at 14 Willow Lane, Clinton, Connecticut (the "Property") with her then-husband. (Defendant's Statement of Undisputed Material Facts ("SUMF") ¶ 15.)[1] She became the sole owner of the Property through her divorce in 2001. (*Id*. ¶ 16.) Becoming a single mother in 2001 put financial pressure and stress on Sticht and began a long period of financial hardship. (*Id.* ¶¶ 19, 20.)

Sticht refinanced her mortgage loan in June 2009 with a financial institution other than Wells Fargo. (*Id.* ¶ 17.) Wells Fargo began servicing Sticht's loan in August 2009. (*Id*. ¶ 18.) Sticht testified to financial struggles and payment difficulty soon thereafter, as her income declined when she suffered injuries and lost her job at a home healthcare agency in 2010. (*Id.* ¶¶ 8–10, 20.) Sticht subsequently began working at her family's business— Variety Adult Boutique—on a reduced income, making around $522 to $555 a week. (*Id.* ¶¶ 11–14.)

Wells Fargo reviewed Sticht for various types of assistance during the life of the loan. The Bank granted Sticht a six-month unemployment forbearance that lowered her monthly payments to $25 from December 2012 to May 2013. (*Id*. ¶ 21.) The forbearance plan deferred

---

[1] All record citations are to the record evidence identified in Defendant's Statement of Undisputed Material Facts ("SUMF"). Unless otherwise indicated, cited exhibits have been concurrently filed with the SUMF.

payment on the balance of the monthly amounts until after Sticht completed the plan or became fully employed. (*Id*. ¶ 22.) The forbearance ended in May 2013 after she completed the plan. (*Id*. ¶ 21) As of June 2013, Sticht's loan was delinquent in the amount of $12,082.32. (*Id*. ¶ 23.)

On July 18, 2013, the Bank reviewed and approved Sticht for an FHLMC Streamlined Trial Modification that would have lowered her monthly payments by $217.85, from $1,547.34 to $1,329.49. (*Id*. ¶ 25.) Sticht did not accept this modification, and her loan remained in default. (*Id*.) On September 11, 2013, Wells Fargo began foreclosure proceedings on the Property in accordance with the terms of the mortgage loan. (*Id.* ¶ 26.)

Sticht hired an attorney to represent her in the foreclosure proceeding. (*Id*. ¶ 27–28.) On the advice of that attorney, Sticht vacated the Property in February 2014. (*Id.* ¶¶ 29–30.) Wells Fargo continued working with Sticht to see if she was eligible for any payment assistance program. On May 13, 2014, Sticht told Wells Fargo that she "would not be receiving SNAP benefits after June 2014." (*Id.* ¶ 36.) The loss of her SNAP benefits would further reduce her monthly income by $217.50. (*Id*.) On May 20, 2014, Sticht hired a realtor and listed the Property for sale. (*Id.* ¶¶ 34–35.)

In the summer of 2014, Wells Fargo reviewed Sticht for three distinct loan modifications—HAMP,[2] FHLMC Standard, and FHLMC Streamlined. Sticht was correctly denied the HAMP modification because her loan originated after January 1, 2009, and thus

---

[2] HAMP refers to the Home Affordable Modification Program, a U.S. Department of the Treasury program under the Making Home Affordable (MHA) program launched in 2009. *See* https://home.treasury.gov/data/troubled-assets-relief-program/housing/mha/hamp.

5

failed to satisfy one of the HAMP criteria. (*Id.* ¶ 45.) She was also correctly denied the FHLMC Standard Trial Modification because she did not meet three of the program's financial thresholds. (*Id.* ¶ 39.) Wells Fargo erroneously denied Sticht for the FHLMC Streamlined Trial Modification due to a calculation error in the "HPA Tool," an underwriting tool used to evaluate borrowers for some loan modifications. (*Id.* ¶¶ 1–2, 40.) Sticht takes no issue with the HAMP or FHLMC Standard denials – her only claim in this case relates to the FHLMC Streamlined denial, discussed below.

### B.    The Erroneously Denied Trial Modification

On June 6, 2014, Sticht was erroneously denied an FHLMC Streamlined Trial Modification due to the HPA Tool software error. (*Id.*) At the time of the erroneous denial, Sticht's monthly mortgage payment was $1,532.24. (*Id.* ¶ 42.) Had the error not occurred, Sticht would have been offered a trial loan modification that would have reduced her monthly payment by $3.05, to $1,529.19. (*Id.* ¶ 41.) To convert the trial modification into a permanent modification, Sticht would have needed to make three full, timely monthly trial payments of $1,529.19 and fulfill certain other requirements. (*Id.* ¶ 43, M. Bryar Rep., ¶ 54.)

In June 2014, Sticht testified that an affordable monthly mortgage payment would have been in the $1,200–$1,300 range, hundreds of dollars less than her $1,532.24 payment at that time. (*Id.* ¶ 44.) Since she did not receive a payment reduction to the $1,200–$1,300 range, Sticht continued with the short sale process on the advice of her foreclosure attorney. (*Id.* ¶ 46.) She was approved for a short sale of the Property in December 2015. (*Id.* ¶ 47.) A short sale was completed in January 2016. (*Id.* ¶ 48.)

In June 2018, Wells Fargo publicly announced that a software error had led to erroneous denials of trial loan modifications for certain borrowers in the foreclosure process. (*Id.* ¶ 1.) Wells Fargo notified Sticht on September 12, 2018, that one trial modification for which she was reviewed was impacted by the error, sent her a no-strings-attached payment of $15,000, and offered to mediate with her if she felt the payment did not make things right. (*Id.* ¶ 6.) Sticht did not mediate but cashed the check. (*Id.* ¶¶ 5–6.) On November 18, 2019, Wells Fargo sent Sticht another letter including a second check for $15,000, which she did not cash. (*Id.* ¶ 7.) This lawsuit followed.

### C.     Procedural Background

Sticht is an opt-out from the settlement class in *Ryder v. Wells Fargo Bank, N.A.*, No. 19-cv-638 (S.D. Ohio 2019), a class action that asserted claims against Wells Fargo arising out of the HPA tool error. (*Id.* ¶ 50.) The *Ryder* class consisted of borrowers who, like Sticht, were erroneously denied a trial loan modification due to a calculation error.

Sticht filed this opt-out action on October 14, 2020, asserting six causes of action against Wells Fargo. (Compl., Dkt. No. 1.) She subsequently withdrew all but two of her claims: violation of the CUTPA and IIED. (*See* Pl.'s Opp'n to Mot. to Dismiss, Dkt. No. 41, at 2, 10; *see also* Mot. to Dismiss Order ("MTD Order"), Dkt. No. 58, at 5.) Sticht claims emotional distress damages and economic loss consisting of the expenses of foreclosure, the loss of value of her home due to foreclosure,[3] the loss of household furnishings, and damage

---

[3] Sticht testified that she is not claiming any lost appreciation in the value of her home following the short sale. (SUMF ¶ 67.) Nor could she prove such damages. Sticht has designated no experts in this matter, and the deadline to do so has passed. (Amended Scheduling Order of December 11, 2023, Dkt. No. 127.)

to an above-ground pool.  (SUMF ¶¶ 69–70; Ex. 47 (Pl.'s Damages Analysis).)

IV.    **THE UNDISPUTED EVIDENCE ESTABLISHES THAT BOTH OF PLAINTIFF'S CLAIMS FAIL FOR LACK OF CAUSATION**

Sticht's claims fail due to lack of causation.  To proceed past summary judgment on a CUTPA or an IIED claim, Sticht must identify sufficient evidence from which a reasonable jury could find that Wells Fargo caused the harms she alleges: the loss of her home; the loss of, or damage to, personal property; and emotional distress.  *See Sylvia v. Kensington Auto Serv., Inc.*, 2021 WL 2634502, at *2 (D. Conn., June 26, 2021) (CUTPA); *Mumma v. Pathway Vet All., LLC*, 648 F. Supp. 3d 373, 398–99 (D. Conn. 2023) (IIED).  Further, to obtain money damages under CUTPA, Sticht must also show that Wells Fargo's conduct was the *proximate* cause of her alleged harm.  *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 547 F. Supp. 3d 195, 225 (D. Conn. 2021), *aff'd*, 79 F.4th 206 (2d Cir. 2023).  Here, the undisputed evidence shows that Wells Fargo's erroneous denial of the trial loan modification did not cause—let alone proximately cause—Sticht's claimed losses.  To the contrary, the undisputed evidence conclusively establishes that Sticht could not have afforded her mortgage payments even if she *had* received a correctly calculated FHLMC streamlined trial modification in June 2014 and that Wells Fargo did not cause the loss of any personal items from the Property.

A.    **Sticht Could Not Have Afforded the Correctly Calculated Trial Payments**

Sticht alleges that she "lost her home because Wells Fargo wrongly determined that she . . . did not qualify for a mortgage modification."  (First Am. Compl. ("FAC"), Dkt. No.

34, ¶ 1.)  But the undisputed evidence, and simple mathematics, show this is not the case. Correctly calculated, the June 2014 FHLMC Streamlined Trial Modification would have lowered Sticht's monthly payments *by only $3.05—from $1,532.24 to $1,529.19*.  (SUMF ¶ 41.)  According to Sticht's own testimony, she needed her monthly payment reduced to $1,200–$1,300 to afford them—i.e., an approximately $300 reduction.  A correctly calculated trial modification would have reduced her payments by only $3.05, nearly 100 times less than Sticht testified was necessary.  (*Id.* ¶¶ 41, 44.).  The $3.05 reduction, by her own admission, would not have provided affordable mortgage payments.  (*Id.* ¶ 44.)  So, even if Wells Fargo had offered Sticht the $1,529.19 payment, Sticht's situation would have remained the same— in default and in foreclosure due to non-payment caused, not by Wells Fargo, but by Sticht's own financial hardship.

Also undisputed is the fact that the FHLMC Streamlined Trial Modification was not permanent.  (*Id.* ¶ 43, M. Bryar Rep., ¶ 54.)  Permanently modifying her loan would have required Sticht to make timely and full payments during a three-month trial period.  (*Id.*) Yet when the error occurred, Sticht was already $18,181.73 delinquent with a $1,532.24 monthly mortgage payment that she admittedly could not afford.  (*Id.* ¶ 42, 44.)  Sticht had also informed Wells Fargo at that time that her overall income was soon to be reduced because she was losing SNAP benefits—meaning she would need to reallocate some of her income to pay for food.  (*Id.* ¶ 36.)  Given these undisputed facts, including Sticht's repeated testimony that she needed payment relief 100 times greater than the FHLMC streamlined modification would have yielded, no reasonable jury could conclude that the $3.05 payment

9

reduction would have allowed Sticht to make her mortgage payments and retain possession of her home. *McCulloch v. Hartford Life and Acc. Ins. Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005) (under CUTPA, the predicate conduct "must have been ***both a substantial and a reasonably foreseeable factor*** in bringing about the complained-of harm.") (emphasis added).

Evidence of the outcomes from other recipients of streamlined modifications, such as the FHLMC Streamlined Trial Modification Sticht would have received, corroborates Wells Fargo's causation argument. Customers who received streamlined modifications re-defaulted at higher rates than any other type of modification. (SUMF ¶ 43, M. Bryar Rep., ¶ 116.)[4] And Sticht's re-default risk was compounded by the negligible payment reduction she stood to gain from a correctly calculated modification. Industry research confirms that "[t]he redefault rate is directly correlated with the amount of the payment reduction" a modification provides, in that "larger monthly payment reductions make the loan less likely to redefault." (*Id.*, M. Bryar Rep., ¶ 42 & n.11 ("a 1 percentage point increase in the payment reduction is associated with a 1.6 percent decline in the odds of redefault").) The payment reduction Sticht was erroneously denied was approximately 1% of the amount she testified was necessary to make the payment affordable for her (*id.* ¶¶ 41, 44), rendering her at significant risk of re-default. (*Id.* ¶ 43; M. Bryar Rep. ¶¶ 116, 42 & n.11.)

Finally, further breaking the chain of causation, Sticht vacated the Property in

---

[4] Plaintiff did not depose Wells Fargo's industry expert, Marcel Bryar, and disclosed no expert witness of her own.

February 2014—months before the June 2014 erroneous denial—because her foreclosure attorney (not Wells Fargo) "told [her] to get out." (*Id.* ¶¶ 29–30, 32.)  Sticht then *listed the Property for sale* in May 2014, also before the erroneous denial.  (*Id.* ¶ 37.)  In other words, Sticht had moved out of the Property and posted it for sale before she was even considered for the erroneously denied modification that she claims caused the loss of that Property.

Sticht's testimonial admissions and the undisputed documentary evidence confirm that Sticht would not have been able to afford her monthly mortgage payments even if the erroneous denial had not occurred, and that she left the Property and listed it for sale months before the streamlined modification was erroneously denied.  Therefore, because Sticht cannot show a causal connection between the erroneous trial modification denial and the injuries she allegedly suffered, including the loss of the Property, she cannot prevail on either of her claims.  *McCulloch*, 363 F. Supp. 2d at 181.  Wells Fargo is entitled to summary judgment.

### B.       Wells Fargo Did Not Cause Sticht to Lose Any Personal Property

Sticht claims her personal property was damaged or destroyed in what she characterized as a "wrongful foreclosure." (*Id.* ¶¶ 69–70, FAC ¶ 54(h).)  Sticht testified this personal property consisted of "three TVs," "two couches," "a bed, a gaming system, a refrigerator," "a stand-up freezer," and an above-ground pool.  (SUMF ¶ 69.)  As shown *supra*, however, the FHLMC Streamlined Trial Modification erroneously denied in June 2014 did not cause the loss of the Property.  (*See supra* at 8–11.)  Nor did it cause the loss of, or damage to, any personal items from that Property.

11

Sticht claims she lost personal property when she "took everything" and "put it on the side of the road [for] free" as she vacated her home in February 2014 and when she left items behind after being locked out of the Property in or around June 2014. (SUMF ¶¶ 31, 33–34, 69.)  She also claims damage to an above-ground pool from the winterization of the Property after she vacated it.  (*Id.* ¶ 70.)  Critically, however, Sticht testified that she was directed to move out in February 2014 by her attorney *four months* before Wells Fargo incorrectly denied her modification and *nearly two years* before the short sale of her home.  (*Id.* ¶¶ 29–32.)  Sticht also testified that it was her realtor who locked her out of the Property shortly after she hired him in May 2014.  (*Id.* ¶¶ 34, 37.)  Sticht acknowledged that neither her foreclosure attorney nor realtor worked for Wells Fargo.  (*Id.* ¶¶ 28, 35.)  Wells Fargo did not cause Sticht to lose any personal property.  Sticht readily admits that she chose to leave her personal property behind at her lawyer's direction and that her own realtor—not Wells Fargo— apparently locked her out.  (*Id.* ¶¶ 33–34.)  Nor did Wells Fargo cause any damage to the Property or pool due to having it winterized.  Those services took place because Sticht moved out of the home at the direction of her attorney, well before both the erroneous denial and the short sale, leaving the Property empty.  (*Id.* ¶ 70.)  Thus, the Court must grant summary judgment in Wells Fargo's favor as to her claims based upon being "locked out" and based upon her lost or damaged personal property.

**C.** **Summary Judgment Is Warranted on the Independent Ground that Sticht Could Have Reasonably Avoided Her Claimed Injuries**

A CUTPA claim requires that a plaintiff prove "a substantial injury to consumers" that the plaintiff "could not have reasonably avoided." *U.S. on Behalf of and for Use of Balf*

*Co. v. Casle Corp.*, 895 F. Supp. 420, 430 (D. Conn. 1995).  Before the erroneous denial, Sticht failed to take the necessary steps to complete at least one other request for mortgage assistance, and she did not accept Wells Fargo's offer of a trial loan modification that *would* have reduced her monthly payment by hundreds of dollars (as opposed to $3.05)—a viable alternative that might have enabled Sticht to keep up with her modified payments.  Sticht's failure to accept this affordable loan modification is a separate and independent ground requiring summary judgment in Wells Fargo's favor.

On July 9, 2013, shortly after her unemployment forbearance period ended, Sticht sought additional mortgage assistance from Wells Fargo but failed to provide the information required to determine her eligibility for certain modification products.  (SUMF ¶ 24.)  On July 18, 2013, Wells Fargo approved Sticht for an FHLMC Streamlined Trial Modification that would have lowered her monthly mortgage payments by $217.85, from $1,547.34 to $1,329.49.  (*Id.* ¶ 25.)  This amount is close to the $1,200—$1,300 monthly payment range that Sticht testified she could have afforded.  (*Id.* ¶ 44.)  But Sticht turned down this trial modification on July 24, 2013, as her testimony confirms.  (*Id.* ¶ 25.)  Wells Fargo documented the non-acceptance in an August 8, 2013 letter to Sticht.  (*Id.*)

Connecticut courts readily dispose of CUTPA claims where the claimant could have avoided the alleged injury.  *See*, *e.g.*, *Leaksealers, Inc. v. Conn. Nat'l Bank*, 1995 WL 384611, at *10 (Conn. Super. Ct. 1995) (striking CUTPA claims because court was unable to "fairly conclude" that plaintiff could not reasonably have avoided its alleged injury); *Louison v. W. Haven Buckle Co.*, 1995 WL 512960, at *5 (Conn. Super. Ct. Aug. 23, 1995) (dismissing

CUTPA counterclaim because claimant could have avoided substantial injury by paying overdue invoices). Here, Sticht could have accepted the July 2013 trial modification to reduce her monthly loan payment by over $200, which would nearly have brought the payment into her identified realm of affordability. (SUMF ¶¶ 25, 44.) Because Sticht could have avoided the erroneous denial by accepting a much more favorable modification one year earlier, or potentially by submitting all required application materials in July 2013, her CUTPA claim should be dismissed on this ground, as well.

## V.      STICHT IS NOT ENTITLED TO THE EMOTIONAL DISTRESS DAMAGES SHE SEEKS

Sticht did not suffer "severe" emotional distress due to Wells Fargo's erroneous denial, which is fatal to her IIED claim. *See Doe by and through Boyd v. Smereczynsky*, No. 3:16-CV-00394 (MPS), 2018 WL 4266084, at *8 (D. Conn., Sept. 6, 2018) (citing *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000)). All evidence pertaining to this material fact is in accord. First, Sticht denies having suffered severe emotional distress. Second, the testimony of Sticht's family members confirm she suffered no emotional distress because of the erroneous denial or short sale. Third, there is no documentary evidence of any emotional distress attributable to Wells Fargo's conduct, and Sticht has confirmed that her psychotherapist will not be called as a witness.

Any emotional distress Sticht may have suffered is not an ascertainable loss for purposes of her CUTPA claim. Sticht must prove ascertainable loss to succeed on a CUTPA claim, and a demonstrated monetary or property loss caused by Wells Fargo is required—

14

emotional damages cannot, by themselves, constitute an ascertainable loss.[5]  Because the record contains no evidence of any monetary or property loss caused by Wells Fargo's conduct, the CUTPA claim fails as a matter of law and undisputed fact.

Rounding out the defects in Sticht's emotional distress-related claims, the undisputed facts and relevant case law demonstrate that Wells Fargo's alleged conduct does not rise to the level of "extreme and outrageous," as Connecticut law requires for Sticht's IIED claim.

### A.    Sticht Did Not Suffer "Severe" Emotional Distress

To prevail on her IIED claim, Sticht must prove that Wells Fargo's conduct was intentional, extreme and outrageous, and the cause of her emotional distress; she must also prove that the emotional distress she sustained was "severe." *Sabir v. Jowett*, 214 F. Supp. 2d 226, 242 (D. Conn. 2002); *see also Appleton*, 254 Conn. at 210.  "It is for the court to determine whether on the evidence severe emotional distress can be found[.]" *Stapleton v. Monro Muffler*, No. CV980580365S, 2003 WL 462566, at *4 n.1 (Conn. Super. Ct. Feb. 3, 2003).  Here, the undisputed facts refute Sticht's claim that her emotional distress was severe.

Federal courts analyzing Connecticut state-law claims assess emotional distress using a tiered framework. *Sabir*, 214 F. Supp. 2d at 248.  The lowest tier, "garden-variety," refers to emotional distress that "any healthy, well-adjusted person would likely feel as a result of [the alleged conduct]." *Oral Care Dental Grp. II, LLC v. Pallet*, 213 Conn. App. 389, 397 (2022) (citation omitted).  In contrast, "severe" emotional distress—the kind required to

---

[5] As shown *supra*, any monetary or property loss was the result of Sticht's *own* actions—in vacating the Property, disposing of her personal property for free, and listing the Property for sale—or her realtor's actions that caused Sticht to be locked out of the Property. (*See supra* at 11–12.)

sustain an IIED claim— is that which "no reasonable [person] could be expected to endure." *Maselli v. Reg'l Sch. Dist. No. 10*, 235 A.3d 599, 617 (Conn. App. 2020) (citation omitted; alteration in original); *cf. also Stubbs v. Gerken*, No. 3:21CV01525(SALM)) 2022 WL 4585296, at \*17 (D. Conn., Sept. 29, 2022). Connecticut courts look to Section 46 of the Restatement (Second) of Torts when determining whether particular allegations of emotional distress are "sufficiently serious" to support IIED. *Id.* The Restatement instructs the Court to consider "[t]he intensity and the duration of the distress" in making this determination. RESTATEMENT (SECOND) OF TORTS § 46 cmt. j. Judges also observe the oft-cited principle that "[e]motional distress is unlikely to be considered severe in the absence of treatment, medical, psychological, or otherwise." *Maselli,* 235 A.3d at 617.

Sticht's own testimony, and the utter lack of testimonial or documentary corroboration of her claimed emotional distress, establish that no reasonable juror could conclude Sticht suffered severe emotional distress because of Wells Fargo's alleged conduct.

### 1. Sticht Disclaims Experiencing Anxiety or Depression in Connection with the Erroneous Denial

Sticht's own testimony is fatal to her severe emotional distress claims. At her deposition, Sticht disclaimed suffering depression and anxiety related to the modification denial, stating "No. I didn't have time for that." (SUMF ¶ 54.) Sticht instead testified only to general feelings of anxiety related to having to save her home from her default and foreclosure proceeding (both of which pre-dated the erroneous denial) and to an increase in migraines that she has suffered from regularly since she was ten years old, the latter of which she did connect to the modification denial. (*Id.* ¶¶ 51, 55–57, 60.) Headaches, however, like

16

sleeplessness, loss of appetite, insomnia, anxiety, and nausea, are "common responses to stress" that—even collectively—do not rise to the level of "severe" emotional distress. *See, e.g.*, *Powell v. Jones-Soderman*, 433 F. Supp. 3d 353, 379 (D. Conn. 2020), *aff'd*, 849 F. App'x 274 (2d Cir. 2021) (finding that allegations of "headaches, sleeplessness[,] loss of appetite," and that plaintiff's "social relationships suffered," collectively did not amount to severe emotional distress).

Sticht's testimony is replete with paradigmatically "garden-variety" language describing her emotional state, including that "anybody would be depressed" in her situation and that "[i]f you're not a little depressed here and there, then you're not human."[6] (SUMF ¶ 55.) Sticht's testimony resembles "garden-variety" emotional distress claims in other ways, as well. As demonstrated *infra*, the emotional distress evidence in this record is "limited to the testimony of the plaintiff, who describes . . . her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *See Barham v. Wal-Mart Stores, Inc.*, 2017 WL 3736702, at *2 (D. Conn. Aug. 30, 2017) (Bolden, J.). And the forms of distress Sticht does claim, including the alleged increase in what she concedes have been nearly life-long migraines, "lack extraordinary circumstances and are not supported by any medical"—or other—"corroboration." *See Rivera v. W. Haven Smile Dental, LLC*, 2019 WL 13295527, at *9 (D. Conn. May 30, 2019) (Bolden, J.) (limiting emotional distress to garden-variety where plaintiff "relied only on her own testimony" and "did not offer any evidence of

---

[6] Relatedly, Sticht admitted that any emotional distress she experienced decreased in the year following the short sale of her Property in January 2016. (*Id.* ¶ 53.).

medical treatment or other corroboration that would suggest significant or egregious emotional distress"); *Comm'n on Hum. Rights & Opportunities v. Cantillon*, 347 Conn. 58, 62 n.3 (2023) ("The term 'garden variety' . . . refers to mental suffering that is established primarily through the testimony of a plaintiff or a complainant and not through expert medical or psychological evidence.").

Notably, "a plaintiff must offer more than his or her own statements that he or she suffered emotional distress." *Minto v. Conn. State Police*, No. 3:14-CV-00747 (VLB), 2016 WL 5845193, at *6 (D. Conn. Sept. 30, 2016). This means that, without corroboration by other witnesses or by medical records, Sticht's "own characterization of [her] condition does not suffice to fend off summary judgment." *Id*. ("As the Plaintiff offers no corroboration for his claim of emotional distress other than four therapy visits, Plaintiff has failed to raise a triable issue of fact as to his claim of extreme emotional distress."); *cf. also Stefanidis v. Jos. A. Bank Clothiers, Inc.*, No. 3:14-CV-971 (VAB), 2016 WL 845297, at *13 (D. Conn. Mar. 2, 2016) (Bolden, J.) (granting summary judgment on IIED claim because there was no evidence in the record supporting the reason the plaintiff believed he was terminated from his employment, and there was ample evidence to the contrary). The evidentiary record contains neither testimonial nor documentary corroboration of Sticht's claimed severe emotional distress, making summary judgment proper here.

### 2.   Sticht's Family Members Do Not Corroborate Her Alleged Severe Emotional Distress

The evidence from Sticht's family members further undercuts her IIED claim. Sticht's mother, father, and brother each testified that Sticht never spoke to them about feeling

depressed or anxious about anything.  (SUMF ¶¶ 59–66.)  Sticht's daughter, Ashley Manning, who lived with her at the time of the erroneous denial and to whom Sticht has spoken to daily for years, testified that Sticht never told her about any anxiety related to the loss of the Property.  (*Id.* ¶¶ 59–61.)  Sticht also never expressed to her daughter that she was feeling depressed.  (*Id.* ¶¶ 60–61)  The only time Manning recalls Sticht ever talking to her about feeling anxious about anything was between 2008 and 2010, when Sticht told her about having travel-related claustrophobia.  (*Id.* ¶ 52.)  Sticht's husband likewise identified this claustrophobia as the only form of anxiety he is aware his wife has ever had.  (*Id.* ¶ 51.)

Manning testified that she did observe changes in Sticht's demeanor during the 2011–2019 period that she believed could have been tied to some depression or anxiety, though she never discussed those changes with Sticht nor confirmed her personal observations of those changes.  (*Id.* ¶ 60–61.)  This time period begins in 2011, around the time that Sticht began having loan payment difficulties, defaulted on her mortgage loan, and put her house at risk— three years before the erroneous denial occurred.  (*Id.* ¶ 20.)  Manning's descriptions of these changes she observed in Sticht are non-specific and solidly garden-variety in nature: "a change in the vibe"; "overwhelmed"; "increased irritability"; "sad and . . . not as happy as she usually was."  (*Id.* ¶ 61.)  Notably, Manning qualified these observations by stating that the possibly anxiety-related changes were "hard to distinguish because that's like her baseline." (*Id.* ¶ 60)

The testimony of Sticht's family members thus provides no corroboration for the severe emotional distress that is a required element of her IIED claim.

3.   Sticht Offers No Evidence of Any Treatment for Her Alleged
      Emotional Distress

There are no medical records in evidence pertaining to any treatment of Sticht's

alleged emotional distress.  Nor will there be.[7]  It is well-settled that a plaintiff who seeks to

testify about "use of medications, counseling, or other medical treatment . . . is required to

disclose his or her medical records in order to obtain a damages award for that

treatment[-]related emotional distress."  *Oral Care Dental Grp. II, LLC*, 213 Conn. App. at

403–07.  Because Sticht has offered no such medical records, she is precluded from offering

any testimony that "crosses the line into treatment-related emotional distress[.]"  *Conn. Jud.

Branch v. Gilbert*, 343 Conn. 90, 136–38 (2022); *see Wade v. Churyk*, 2018 WL 3830924, at

*5 (D. Conn. Aug. 13, 2018)).

Further, Sticht has not designated any expert in this case, medical or otherwise, and

she has confirmed that she will not call Finkledey at trial.  (Smedley Decl. ¶ 3.)  As a result,

Connecticut case law ensures that the record will remain devoid of treatment-related evidence

as a matter of law and undisputed fact.  *See Wade*, 2018 WL 3830924, at *5 (IIED plaintiffs

who failed to disclose an expert and disclaimed any intention of presenting expert testimony

at trial were barred from themselves "offering testimony regarding a diagnosis, or medical

conclusions, such as causation").

---

[7] Sticht stated that she received treatment for her alleged emotional distress between March 2014 and July 2016 from Catherine Finkeldey, MS, NCC, LPC ("Finkeldey").  (SUMF ¶ 58; Ex. 10 at 2)  Sticht represented that, as of November 11, 2022, she "ha[d] requested her medical records from [Finkeldey] and [would] provide defendant relevant non-privileged medical records once they have been received."  (*Id.*)  Sticht produced no records from Finkeldey.  (Declaration of Angela A. Smedley ("Smedley Decl.") ¶ 2.) Sticht, through counsel, has since confirmed that she will not offer Finkeldey to support her claims.  (*Id.* ¶ 3.)

Where, as here, there is no "evidence of medical treatment . . . that would suggest significant or egregious emotional distress," any emotional distress found by the courts is typically deemed to be "garden variety" in nature. *Rivera*, 2019 WL 13295527, at *9. But "a plaintiff . . . must prove *more* than 'garden variety' emotional distress" to recover damages for IIED. *Spector v. Bd. of Trs. of Cmty.-Tech. Colls.*, 2007 WL 9753111, at *3 (D. Conn. June 28, 2007) (emphasis added). And a plaintiff who establishes only "garden-variety" distress fails to establish the "severe" distress required for IIED liability.

Here, Sticht's failure to produce medical or treatment records, coupled with reliance on her own uncorroborated testimony as to garden-variety distress, precludes the required showing of "severe" emotional distress. Thus, the Court must enter summary judgment in Wells Fargo's favor on Sticht's IIED claim.

### 4. Sticht's Own Testimony Also Defeats Her IIED Claim Because It Establishes a Lack of Causation

Sticht's IIED claim requires proof that Wells Fargo caused the severe emotional distress. *Troland v. Whitehead*, No. 3:12CV822 AVC, 2013 WL 1136720, at *4 (D. Conn., Mar. 18, 2013) (citing *Appleton*, 254 Conn. at 210). As shown *supra*, Sticht's own testimony establishes that she vacated the Property on her foreclosure attorney's instruction four months before the erroneous denial, listed the Property for sale one month before the erroneous denial, and that her alleged lost personal property resulted from that same instruction and her realtor's decision to lock her out of the Property—also before the erroneous denial occurred. (*See supra* at 11–12.) These undisputed facts establish that Wells Fargo was not the cause of the events Sticht claims led to her emotional distress, which is another basis on which to grant

21

summary judgment on the IIED claim.  *See Buster v. City of Wallingford*, 557 F. Supp. 2d 294, 302 (D. Conn. 2008) ("[Plaintiff] admitted during her deposition that her emotional distress was caused not by [the defendant], but rather by [another party]. . . . Because [Plaintiff] lacks sufficient evidence that [the defendant's] remark caused her severe emotional distress, summary judgment must be granted on [her IIED claim.]").

## B. Wells Fargo Did Not Cause an Ascertainable Loss to Sticht

To succeed on her CUTPA claim, Sticht must prove that Wells Fargo's conduct caused her to suffer an ascertainable loss.  Conn. Gen. Stat. Ann. § 42-110g.  Under the statute, *only* a loss of money—or real or personal property—can constitute an ascertainable loss.  *Id*. ("Any person who suffers any ascertainable loss of *money or property*, real or personal, as a result of the use or employment of a method, act or practice prohibited by [CUTPA], may bring an action . . . to recover actual damages.") (emphasis added).  It is well-established under Connecticut law that a "claim of emotional distress does not constitute an ascertainable loss of money or property for purposes of CUTPA."  *Di Teresi v. Stamford Health Sys., Inc.*, 149 Conn. App. 502, 512 (2014) (affirming summary judgment); *see also, e.g.*, *Malick v. JP Morgan Chase Bank, N.A.,* 797 F. App'x 563, 567 (2d Cir. 2019) (allegations of "only emotional harm" are "not enough to establish a[n ascertainable] loss under CUTPA"); *Larobina v. Wells Fargo Bank, N.A.*, 632 F. App'x. 55, 56–57 (2d Cir. 2016) (affirming summary judgment for bank where CUTPA plaintiff claimed only emotional distress damages).

In the FAC, Sticht claimed that her ascertainable loss under CUTPA was the loss of time and money due to the foreclosure and short sale of her home, damage to her credit, and emotional distress.  (FAC ¶ 68.)  Since then, Sticht has narrowed her claimed damages to emotional distress and economic loss due to foreclosure, consisting of the expenses of foreclosure, the loss of value in her home, and loss of household furnishings.  (SUMF ¶¶ 69–70; Ex. 47.)  Sticht further narrowed these claimed damages at deposition, testifying that she is not claiming any lost appreciation in the value of her home.  (SUMF ¶ 67.)  Sticht also denied that her credit had been harmed.  (*Id.* ¶ 68.)

Sticht cannot establish that she suffered an ascertainable loss caused by Wells Fargo.  First, emotional damages cannot satisfy the ascertainable loss requirement.  *Di Teresi*, 149 Conn. App. at 512.  Second, neither of the remaining claimed monetary and property damages—expenses of foreclosure and loss of household furnishings—was "a result of" Wells Fargo's erroneous denial.  (*See supra* at 11–12.)  Because Sticht's alleged emotional distress damages cannot support her CUTPA claim, and because Wells Fargo did not cause the claimed expenses of foreclosure or the loss of household furnishings, the CUTPA claim fails as a matter of law and undisputed fact.  The Court must, therefore, grant summary judgment in Wells Fargo's favor on Sticht's CUTPA claim.

## C.    Wells Fargo's Conduct Was Not "Extreme and Outrageous"

When deciding Wells Fargo's motion to dismiss, the Court considered, but deferred decision on, whether Wells Fargo's alleged conduct satisfies the IIED "extreme and outrageous" requirement.  (MTD Order at 11.)  It is well-settled that "[w]hether a defendant's

23

conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Williams v. Cmty. Sols., Inc.*, 932 F. Supp. 2d 323, 337 (D. Conn. 2013)); *Bank of Am., N.A. v. Criscitelli*, No. CV136038369S, 2015 WL 5806294, at *5 (Conn. Super. Ct. Aug. 31, 2015) ("Only where reasonable minds disagree does it become an issue for the jury."). With the benefit of an evidentiary record, the Court should now revisit the issue and determine, as a matter of undisputed fact, that Wells Fargo's alleged conduct does not satisfy the IIED "extreme and outrageous" requirement.

Connecticut courts have relied on the Restatement (Second) of Torts § 46, comment d (1965) to make "extreme and outrageous" conduct determinations: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Petyan v. Ellis*, 200 Conn. 243, 254 n.5 (1986). To qualify as "extreme and outrageous," conduct must "exceed[] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Kilduff v. Cosential, Inc.*, 289 F. Supp. 2d 12, 21 (D. Conn. 2003). Even *illegal* conduct is not "extreme and outrageous unless it has a natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subject to it." *Hamilton v. Town of Hamden*, No. 3:08-CV-164 (PCD), 2008 WL 4999301, at *10 (D. Conn. Nov. 19, 2008) (internal quotation marks and citation omitted); *see also, e.g.*, *DeLeon v. Little*, 981 F. Supp. 728 (D. Conn. 1997) (city supervisor ordering employee to buy illegal drugs and stand guard while supervisor ingested same was

24

not extreme and outrageous); *Lopez-Salerno v. Hartford Fire Ins. Co.*, 1997 WL 766890 (D. Conn., Dec. 8, 1997) (terminating employee to avoid giving her long-term disability benefits was not extreme and outrageous). Federal courts applying Connecticut law interpret the qualification of extreme and outrageous conduct "strictly." *Golnik v. Amato*, 299 F. Supp. 2d 8, 16 (D. Conn. 2003).

Sticht claims that Wells Fargo's conduct was "extreme and outrageous" because it was allegedly done "with the purpose of evading government oversight" and "was responsible for Plaintiff losing her home." (FAC ¶ 82.) But the record contains no evidence to support this contention. To the contrary, the undisputed evidence bears out the observation that "[t]he specific acts [Sticht] identif[ies] fall short of constituting conduct that is utterly intolerable in a civilized society," as required to proceed with her IIED claim. (MTD Order at 12 (citing *Walker v. Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Loan Tr. 2005-11AR*, No. 3:16-CV-697(AWT), 2017 WL 1115201, at *7 (D. Conn., Mar. 24, 2017).)

Here, the undisputed evidence establishes that Wells Fargo repeatedly reviewed Sticht for loan payment assistance eligibility, provided her an unemployment forbearance plan, sought additional materials for incomplete applications submitted by Sticht, approved her for a loan modification in July 2013 (which she did not accept), and continued to consider her for payment assistance opportunities multiple times. (SUMF ¶¶ 21, 24–25, 38.) When Wells Fargo became aware in 2018 that Sticht had been impacted by the software error, it promptly mailed her an apology letter, along with an unsolicited check and an offer of mediation, which Sticht did not accept. (*Id.* ¶ 6.) This conduct, evidencing Wells Fargo's efforts to assist Sticht

25

through the servicing of her loan, and the proactive remediation measures taken once the erroneously denied modification was known, is incompatible with conduct found to be "extreme and outrageous" by Connecticut courts.

Particularly in traditionally arm's-length interactions, such as those between a bank and its borrower, "[t]he standard for intentional infliction of emotional distress is extraordinarily high." *Bank of Am., N.A. v. Criscitelli*, No. CV136038369S, 2015 WL 5806294, at *5 (Conn. Super. Ct., Aug. 31, 2015). In *Criscitelli*, borrower allegations that a bank had "agreed to a loan modification, and then for bad faith reasons, reneged on the loan modification agreement and commenced a foreclosure" were held not to be "conduct that a reasonable fact finder could find to be extreme or outrageous." *Id.* And *Walker* held that even unfulfilled promises by lenders, where the "lenders repeatedly promise plaintiffs qualification for loan modification programs, plaintiffs repeatedly submit personal and financial information, and lenders repeatedly fail to respond," could not support a claim for IIED. 2017 WL 1115201, at *8. Similarly, Wells Fargo's conduct towards Sticht—even if the Court were to find some of it objectionable—is no more "extreme and outrageous" than the conduct in *Criscitelli* and *Walker* and falls *well* short of the illegal conduct in *DeLeon* and *Lopez-Solerno*, *supra*. In sum, Wells Fargo's conduct, as established by the undisputed evidence, does not rise to the high bar set by Connecticut courts for intentional infliction of emotional distress. Therefore, since Sticht cannot satisfy this essential element of her cause of action, the Court must grant summary judgment in Wells Fargo's favor on her IIED claim.

## VI.    CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court grant its

motion for summary judgment as to Plaintiff's remaining claims.


Dated: April 5, 2024                              Respectfully submitted,


                                                  /s/ Angela A. Smedley
                                                  Angela A. Smedley (*pro hac vice*)
                                                  Winston & Strawn LLP
                                                  200 Park Avenue
                                                  New York, NY 10166
                                                  Phone: 212-294-5348
                                                  Fax: 212-294-4700
                                                  Email: asmedley@winston.com

                                                  Shawn R. Obi (*pro hac vice*)
                                                  Michael L. Lavetter
                                                  Winston & Strawn LLP
                                                  333 South Grand Avenue
                                                  Los Angeles, CA 90071
                                                  Phone: 213-615-1700
                                                  Fax: 213-615-1750
                                                  Email: sobi@winston.com

                                                  Sean R. Higgins (ct28279)
                                                  K&L Gates LLP
                                                  One Congress Street, Suite 2900
                                                  Boston, MA 02114
                                                  Phone: 617-261-3128
                                                  Fax: 617-261-3175
                                                  Email: sean.higgins@klgates.com

                                                  *Attorneys for Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system on April 5, 2024 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and a paper copy will be sent by mail to non-registered participants.

/s/      *Angela A. Smedley*

1